# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND VINCENT RAMONE, et al., | Case No.: 1:17-cv-0825 - JLT |
| Plaintiffs, | ORDER GRANTING THE GOVERNMENT'S MOTION TO LIMIT DAMAGES |
| v. | |
| UNITED STATES POSTAL SERVICE, et al., | (Doc. 26) |
| Defendants. | |

Raymond and Rita Ramone assert the Government is liable for personal injuries they suffered during a car accident with a mail carrier employed by the United States Postal Service. They filed administrative tort claims with the USPS related to their injuries. The Government now seeks to limit the damages to the amount identified in the administrative claims. (Doc. 26) For the reasons set forth below, the Government's motion is **GRANTED**.

## I.   Background

Plaintiffs allege that on April 24, 2016, they were traveling on State Route 46, "an east-west highway with two lanes in the east direction and one lane in the west direction in the unincorporated area of … Paso Robles, County of San Luis Obispo, State of California." (Doc. 1 at 3-4, ¶¶ 10, 11) Plaintiffs assert their vehicle, a 2013 Buick Encore, was struck on the right side by a Grumman LLV Truck, operated by Andres Recinos. (*Id.*, ¶¶ 11, 15) Plaintiffs assert that Mr. Recinos "was acting in the course and scope of his employment with the USPS at the time[]." (*Id.*, ¶ 7)

1

Plaintiffs reported Mr. Ramone was driving, and Mrs. Ramone was the passenger in the vehicle at the time of the accident. (Doc. 26-3 at 4) Plaintiffs assert that due to "the negligent and careless actions" of the USPS driver, they were "injured in their health, strength and activity, sustaining major injuries causing and continuing to cause plaintiffs great mental and physical and nervous pain and suffering which may result in permanent disability." (Doc. 1 at 4, ¶ 12) Plaintiffs allege they "were required to and did employ physicians for medical examination, treatment and care for their injuries and did incur medical and incidental expenses in that regard…" (*Id.*, ¶ 13) Further, Plaintiffs contend they "will incur future medical and incidental expenses for the care and treatment of said injuries." (*Id.*, ¶ 14)

On October 3, 2016, Plaintiffs submitted tort claims using the Standard Form-95, both of which were signed by their attorney, Greg Muir. (Doc. 26-3 at 4-7) Mrs. Ramone indicated that "[s]he suffered cuts and abrasions to her right elbow, swollen knee, and neck pain." (*Id.* at 4) Under the section for identifying property damage, Mrs. Ramone claimed the amount of $18,067.25. (*Id.*) In the section for the amount claimed for personal injury, she indicated "claimant still treating[;] unknown at this time." (*Id.*) Where asked to specify the total of all claims—and informed "[f]ailure to specify may cause forfeiture of your rights"—Mrs. Ramone indicated the total was "well in excess of $25,000 according to proof." (*Id.*)

On his tort claim, Mr. Ramone reported he suffered a "[n]eck injury; left shoulder injury; and both left and right hand injuries." (Doc. 26-3 at 6) He reported the vehicle was owned by his wife, and he did not claim any property damage. (*Id.*) In the section for identifying the amount sought for his personal injuries, Mr. Ramone indicated "unknown at this time[;] claimant still treating." (*Id.*) He also indicated the total claimed was "well in excess of $25,000 according to proof." (*Id.*) Each form also stated: "I certify the amount of claim covers only damages and injuries caused by the incident above and agree to accept said amount in full satisfaction and final settlement of this claim. (*Id.* at 4, 6) The forms also read, "failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights." *Id.* at 5, 7.

On October 6, 2016, Cary Pons, with USPS Accident Investigations, contacted Plaintiffs' counsel regarding the documentation provided. (Doc. 28 at 8) Mr. Pons indicated:

> Please be advised that your documentation is incomplete and therefore does not constitute a valid claim. Under the provisions of the Federal Tort Claims Act, any claim for personal injury must be supported by evidence that establishes the fact and extent of any injury. Once your client has finished treating, please submit complete itemized bills for medical expenses incurred, or itemized receipts for payment for such expenses. Please submit a written report from the attending physician describing the injury sustained. The report should show the nature and extent of the injury, the nature and extent of the treatment, the prognosis and the period of disability.
>
> The statute of time limitations under the Federal Tort Claims Act is two years. It is therefore required that your properly supported sum certain demand be presented on Standard Form 95, Claim for Damage, Injury or Death, and received in this office no later than two years from the date of loss or injury.
>
> Enclosed please find a blank SF 95, which you should complete and resubmit, in its original form, before the United States Postal Service can take any action to dispose of this claim. If you should require further assistance, please feel free to contact this office.

(Doc. 28 at 8)

On November 16, 2016, Plaintiffs responded to the letter by submitting "a copy of all billings and medical records for both clients to date, advising that the clients had not completed treatment and could not include any final report from their physicians as to their injuries." (Doc. 28 at 3; *see also* Doc. 26-3 at 9-18) The submitted medical records for Mr. Ramone included a report dated September 9, 2016 from Dr. Mark Schamblin, which indicated Raymond had been diagnosed with a cervical spine injury and "full thickness rotator cuff tear," for which "a left should arthroscopy with rotator cuff repair, decompression and distal clavicle excision ... [was] recommended." (Doc. 28 at 2, 11-13)

The records submitted for Mrs. Ramone included a report dated September 29, 2016 from Southern California Orthopedic Institute, which indicated she "had a long-standing history of neck complaints over the past several years," which increased after the accident. (Doc. 26-3 at 15) She reported,

> a long-standing history of neck complaints over the past several years. However, they have increased in frequency and severity since being involved in a motor vehicle accident April 24, 2016, five months ago. In the past 5 months, she reports very minimal improvement in her condition spontaneously . . . As a manicurist, she has difficulty with opening objects and grasping objects. She reports that the pain is 3+/10 in severity, dull and sharp in nature.

*Id*. Imagining showed Rita Ramone had "endstage degenerative disc disease with complete collapse and loos of disc height at C5-6 and C6-7 with diffuse spondylotic changes," and "moderate to severe

3

central and lateral recess spinal canal stenosis..." (*Id.* at 17) The physician assistant with Dr. Schopler reported,

> At this time, given persistence and severity of radicular complaints, we will pursue with a diagnostic and therapeutic cervical epidural steroid injection with pain management specialist, Dr. Parmar. . .
>
> Grounds and basis for the epidural come on the following failed conservative treatment measures to date: Persistence of pain for the past several years and specifically over the past 5 months with radicular complaints, failure of pharmacologic treatment, failure of pain management with Dr. Parmar including trigger point injections.

(*Id.* at 18) She elected to proceed with epidural steroid injections but also discussed "elective definitive surgical intervention ... for an anterior cervical discectomy and fusion" with Emily Fish, PA-C. (*Id.* at 18) In concluding the contact, PA Fish reported, "All of [Mrs. Ramone's questions and concerns were addressed and answered." (*Id.*)

Along with the supplemental medical records[1] provided in November 2016, the plaintiffs also submitted documentation[2] that by that time, a total of $4,600 had been spent on medical care for Mr. Ramone and $1,316 for Mrs. Ramone. (*See* Doc. 28 at 15) Just weeks after submitting the supplement, Mr. Ramone underwent the surgery for the rotator cuff tear (performed on December 15, 2016) (Doc. 28-1 at 34-35).

Without submitting any further information related to their claims, Plaintiffs initiated this action on June 20, 2017[3]. (Doc. 1) The USPS denied the claim in writing on June 27, 2017. The letter stated in relevant part:

> Your submissions further indicated that your clients were still treating and final medical records would be forthcoming. However, no additional records were submitted to the Postal Service for review and evaluation as required by the applicable regulations (39 CFR 912.7 and .8 ("to exhaust the administrative remedy a claimant shall submit substantial evidence to prove the extent of any losses incurred and any

---

[1] Plaintiffs' counsel repeatedly referenced the fact that there was delay in obtaining the medical records. However, he offered no explanation why the plaintiffs were unable to obtain a copy of the notes by simply asking for them at the time of the medical contact or soon after or why a statement of the Ramones explaining what occurred at the medical visit could not have been submitted. *See*, e.g., *Blair v. I.R.S.*, 304 F.3d 861, 866 (9th Cir. 2002).

[2] This information is contained in spreadsheets apparently created by counsel, rather than bills presented by the provider. (Doc. 26-3 at 10, 14) Thus, the Court concludes that the plaintiffs and counsel was aware that they could summarize what they knew and had been told, rather than awaiting receipt of the records or failing to report information known to them.

[3] The Court notes that this filing was about 10 months before the statute of limitations was set to expire. The plaintiffs offered no satisfactory explanation why, if they were so uncertain how their injuries would progress, they did not wait until this information was known so they could update their claims and be more accurate in their court filings, as required by Rule 11.

4

> injury sustained, so as to provide the Postal Service with sufficient evidence for it to properly evaluate the claim")). Given the pending litigation and your office's failure to completely exhaust Mr. and Mrs. Ramone's administrative remedy, we have no option but to deny their claims.

(Doc. 28 at 15)

In a Joint Mid-Discovery Status Report filed in March 2018, Plaintiffs reported they were "still treating for their injuries they sustained in this accident" and anticipated that their "medical treatment and vocational status shall be ascertainable by early summer of 2018." (Doc. 20 at 2) A year later, on March 26, 2019, Plaintiffs "submitted [to the defense] documentation of the respective claims of Plaintiffs in terms of medical expenses and loss of earnings." (Doc. 28-1 at 2, Muir Decl. ¶ 6) Mr. Muir contends the records show "the severity of actual damages for both Plaintiffs began to take flight over the … two years." (*Id.*, ¶ 4)

The documents submitted to the Government indicated that as of March 2019, Mr. Ramone's medical care totaled $86,516.63, of which he was responsible for $13,257.90. (Doc. 28-1 at 41) In addition, Mr. Ramone reported "a total loss of earnings in the amount of $42,896.80." (*Id.*) Mrs. Ramone reported her medical care costs at that point totaled $168,476.05, of which she was responsible for $93,434.21 after adjustments. (*Id.* at 42-43) These amounts "were not inclusive of general damages, nor future medical expenses for the future planned cervical surgery of Mrs. Ramone." (*Id.* at 2, ¶ 7)

The Government filed the motion now pending before the Court to limit damages to the administrative claim amount on June 7, 2019. (Doc. 26) Plaintiffs filed their opposition to the motion on June 25, 2019 (Doc. 28), to which the Government filed a reply on July 2, 2019 (Doc. 29). Plaintiffs also filed a sur-reply, without leave of the Court (Doc. 33).

## II.     Claims under the Federal Tort Claims Act

Under the Federal Tort Claims Act, any party asserting a claim for money damages arising out of the negligent or wrongful act of a government employee must first file a claim with the administrative agency at issue. 28 U.S.C. § 2675(a). The agency then has six months within which to consider the claim and respond. 28 C.F.R. § 14.2. A party may amend the claim up until the agency issues a final denial or upon the exercise of the claimant's option to sue after the expiration of the

agency's six-month consideration period. *Id*. The injured party may file suit after the claim is denied or after the time has expired without any action taken by the agency. 28 U.S.C. § 2675(a).

For any lawsuit filed, a claimant is limited to the amount of the administrative claim and may not seek recovery "in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b). The amount presented to the federal agency must be in the form of a "sum certain." 28 C.F.R. § 14.2(a). The purpose of the "sum certain" limitation in Section 2675 "is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability." *Low v. United States*, 795 F.2d 466, 471 (5th Cir. 1986); *see also Caidin v. United States,* 564 F.2d 284, 287 (9th Cir. 1977) ("[s]ince the purpose of the administrative claim is to facilitate settlement of these disputes, a specific dollar amount is necessary to allow realistic assessment of the settlement value of a case").

There are exceptions to the sum certain requirement: "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). The two exceptions are distinct: "newly discovered evidence" addresses evidence that existed when the claim was filed but was "not discoverable" at that time; "intervening facts," concern information or events "occurring after the filing of the claim." *See Lowry v. United States*, 958 F. Supp. 704, 710 (D. Mass. 1997). "While a plaintiff may seek a larger amount if he meets either of these tests, the burden of proof under both falls on the plaintiff." *Salcedo-Albanez v. United States*, 149 F. Supp. 2d 1240, 1243 (S.D. Cal. 2001) (citing *Spivey v. United States*, 912 F.2d 80, 85 (4th Cir. 1990)); *see also Hogan v. United States*, 1996 U.S. App. LEXIS 13549 at *4 (9th Cir. May 24, 1996) ("The burden of establishing newly discovered evidence or intervening facts rests on the claimant).

To determine whether a claimant meets either exception under Section 2675(b), the court applies an objective standard and must consider whether a claimant's injuries were "reasonably foreseeable at the time the original claim was filed." *See Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988). Diligence by the plaintiff is expected, and "[i]nformation which could have been discovered through the exercise of reasonable diligence does not qualify as newly discovered evidence or intervening facts for purposes of the exception contained in section 2675(b)." *Hogan*, 1996 U.S.

App. LEXIS 13549 at *4 (citing *Low*, 795 F.2d at 470); *see also Lowry*, 958 F. Supp. at 711 ("If the condition was reasonably foreseeable at the time the claim was filed, an increase will not be allowed.").

### III.    Discussion and Analysis

The Government argues the "sum certain" for the administrative claim of each plaintiff is $25,000. (Doc. 26-1 at 3) The Government argues also that Plaintiffs cannot meet the burden to demonstrate an exception under Section 2675(b) should be applied because the "alleged injuries were known to Plaintiffs before they filed their administrative claims." (*Id.* at 4)

####    A.    Sum certain amount

The Government asserts, "The only sum-certain amount arguably associated with Plaintiffs' personal injuries is the $25,000 asserted in each claim." (Doc. 26-1 at 3) The Government notes Plaintiffs indicated the total sought for each of their claims was "well in excess of $25,000," and each indicated medical treatment was ongoing. (*Id.*; *see also* Doc. 26-3 at 4, 6) The Government contends that, because of the "sum certain" requirement, "language such as 'in excess of,' 'at least,' or 'damages are continuing' is considered mere surplusage." (*Id.*, citing *e.g.*, *Blair v. I.R.S.*, 304 F.3d 861, 869 (9th Cir. 2002); *Jacobson v. United States*, 276 F.Supp.2d 1106, 1110 (D. Nev. 2003). The Government notes the Ninth Circuit determined an indication that "[m]edical bills are still being incurred" was surplus language on a tort claim. (*Id.*, citing *Blair*, 304 F.3d at 869)

Notably, Plaintiffs do not oppose the Government's argument that the "sum certain" for each of their tort claims is $25,000. (*See generally* Doc. 28 at 3-6) Indeed, as the Government argues, courts have repeatedly determined language such as "in excess of"—or similar qualifying language— should be ignored to determine the "sum certain" presented in a tort claim. *See, e.g., Corte-Real v. United States*, 949 F.2d 484, 486-87 (1st Cir. 1991) (claim for "$100,000 plus" treated as claim for $100,000); *Martinez v. United States*, 728 F.2d 694, 697 (5th Cir. 1984) (claim for "in excess of $100,000" stated sum certain for $100,000 because "surplus verbiage" could be ignored); *Adams v. U.S. Dep't of Housing and Urban Dev.*, 807 F.2d 318, 321 (2nd Cir. 1986) (finding a claim for "in excess of $100,000.00" was not fatally uncertain, and ignoring the phrase "in excess of" and "leaving the specific amount stated as the claim"); *Erxleben v. United States*, 668 F.2d 268, 272-73 (7th Cir. 1981) (finding where the plaintiff "included the term 'presently' after his dollar figure under the personal injury

heading," he stated a sum certain for the amount claimed).

Though Plaintiffs contend "future medical expenses (although completely unknown), past and future pain and suffering, are also 'unknowns' frequently in personal injury cases and are directly contrary to the mandate of inclusion in a 'sums uncertain' (sic), (Doc. 28 at 6), Plaintiffs fail to identify any case law supporting this position. To the contrary, this Court previously determined that under the FTCA, "[a]ll litigants are required to place a dollar value on their injuries (*including prospective expenses and suffering*) . . ." *Industrial Indemnity Co. v. United States*, 504 F. Supp. 394, 399 (E.D. Cal. 1980).

In *Industrial Indemnity Co.*, the claimant indicated damages in the amount of $560.00 on her SF-95 but also indicated that "compensation benefits are continuing and will continue for an indefinite period of time." *Id.*, 504 F. Supp. at 396. The Court held the claimant should have calculated "the present value of an on-going liability" and was bound to the amount identified on the S-95 form. *Id.* at 397, 399. Thus, the Court treated the language concerning continuing treatment as surplusage and found the sum certain was $560.00. *See id.*

Similarly, Plaintiffs were obligated to include calculations for ongoing treatment in the damages requested and failed reserve a right to seek additional damages by their use of the phrase "well in excess of" found on each of the Ramones' tort claims. *See Industrial Indemnity Co.*, 504 F.Supp. at 399. This was surplus language, and Court finds the "sum certain" for each plaintiff was $25,000. *See Corte-Real*, 949 F.2d at 486-87; *Martinez*, 728 F.2d at 697.

**B.     Section 2675(b) Exceptions**

Plaintiffs contend their "respective claims fall within the exception to the general rule limiting damages." (*Id.* at 3, emphasis omitted) According to Plaintiffs, "the instant case, the medical or damage claims constitute 'intervening facts' and/or 'newly discovered evidence.'" (*Id.*) The Government argues, "there is no newly discovered evidence or intervening facts that would support an argument by Plaintiffs that they should be permitted to exceed the damages they sought in their administrative tort claims." (Doc. 26-1 at 5)

1.     Newly discovered evidence

Evidence is considered "newly discovered" under Section 2675(b) if it was not reasonably

foreseeable at the time the administrative claim was filed. 28 U.S.C. § 2675(b); *see also Hogan*, 1996 U.S. App. LEXIS 13549 at *4; *Low*, 795 F.2d at 470. In cases involving personal injuries— such as the matter before the Court— the FTCA does not hold plaintiffs to a standard that charges them with "knowing what the doctors could not tell [them]." *Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985). Nevertheless, "[w]hen existing medical evidence and advice put the claimant 'on fair notice to guard against the worst-case scenario' in preparing the administrative claim," an attempt to increase the amount of the claim during litigation should be rejected. *Michels v. United States*, 31 F.3d 686, 688 (8th Cir. 1994) (quoting *Reilly v. United States*, 863 F.2d 149, 172 (1st Cir. 1988)). Because Plaintiffs' administrative claims were submitted in October 2016, the relevant inquiry is whether any asserted "newly discovered evidence" was reasonably foreseeable by that date.

The Plaintiffs do not dispute that both Raymond and Rita Ramone's "injuries were known … before they filed their administrative claims." (Doc. 26-1 at 4, citing Ramirez Decl., Exh. B [Doc. 26-3 at 8-21]) The Government observes:

> It is undisputed that medical records, provided with [Raymond Ramone's] administrative claim, show that on September 9, 2016, his orthopedic surgeon, Dr. Mark Schamblin, diagnosed a rotator cuff tear and recommended "surgery for a left shoulder arthroscopy with rotator cuff repair, decompression and distal clavicle excision." Ramirez Decl., Ex., B.
> …
> Similarly, it is undisputed that the medical records submitted with Rita Ramone's administrative claim shows she had significant pre-existing neck pain "over the past several years." Ramirez Decl., Ex., B. She had x-rays indicating "endstage degenerative disc disease with complete collapse and loss of disc height space at C5-6 and C6-7" and an MRI of her cervical spine. *Id.* The treatment plan by her orthopedist on September 29, 2016, was for steroid injections and pain management, follow up, and they discussed "elective definitive surgical intervention was discussed for an anterior cervical discectomy and fusion." *Id.*

(Doc. 29 at 2) Though Plaintiffs contend their "medical or damage claims" constitute newly discovered evidence, neither Mr. Ramone nor Mrs. Ramone identifies a new diagnosis that was unknown when they submitted the claim form.[4] (*See* Doc. 28 at 2-6)

---

[4] The Court notes that Mrs. Ramone has undergone a laminectomy in her lumbar spine. She made no assertion in her claim that she was suffering "back" pain associated with the car accident, her amended claim does not reference any treatment or complaints of back pain—indeed, the first complaint related to back pain was a year after the accident, though two months before the lawsuit was filed (Doc. 28-1 at 22, 24)—and she makes no assertion through a declaration or otherwise in her opposition to the motion, that the lumbar pain was caused by the car accident. Rather, Ms. Ramone waits until her sur-reply, which states only, "The above [reciting the history—although incorrectly—of the discussions related to surgery to

9

Plaintiffs cite several cases to support of their assertion that "the medical or damage claims constitute … 'newly discovered evidence,'" including: *Michels v. United States*, 31 F.3d 686, 688 (8th Cir. 1994); *Powers v. United States*, 589 F.Supp 1084, 1109-1110 (D. Conn. 1984); and *Fulcher v. United States*, 88 F.Supp. 3d 763, 772-74 (W.D. Ky. 2015). (*See* Doc. 28 at 4-5) Though Plaintiffs offer brief summaries of the legal standards identified by the courts and their holdings in these cases— none of which arose within the Ninth Circuit—Plaintiffs do not offer any *analysis* how the decisions are relevant to the matter before the Court or identify any similarities in the facts presented to the courts in *Allgeir*, *Milano*, or *Fulcher*. Indeed, the Court finds these cases are not instructive or applicable to their claims.

Plaintiffs observe that in *Powers*, the District Court of Connecticut found "when a Plaintiff does not know fully the medical extent of his injuries and expenses at the time of his Administrative Claim, the exception to 2675 (b) is triggered." (Doc. 28 at 4, citing *Powers*, 589 F.Supp. at 1109-1110) However, the Government contends—and Plaintiffs do not squarely dispute—the treatment plans recommended for both Raymond and Rita Ramone in September 2016 were followed or will be (*see* Doc. 26-1 at 5; Doc. 29 at 2). This indicates the extent of their injuries were known before the claim forms were submitted and the expenses related thereto could have been projected. Thus, Plaintiffs fail to demonstrate that under *Powers*, the Section 2675(b) exception for "newly discovered evidence" should be applied.

Though Plaintiffs refer to the Eighth Circuit's observation in *Michels*, 31 F.3d 686 (8th Cir. 1994) that "known injuries can worsen in ways not reasonably discovered by the claimant and/or his treating physician" (Doc. 28 at 4), Plaintiffs fail to identify any specific injury suffered by either Raymond or Rita that worsened in a manner that was not, or could not have been, predicted. To the

---

her cervical spine] is with respect to her cervical condition after the accident in question. Her <u>back</u> was not a major complaint after the accident, and was barely referred to, prior to filing of the Government Tort Claim. Defendant's retained physician, Leslie Konkin, M.D., even with the benefit of hindsight, has opinioned that Plaintiffs injuries to her spine were merely soft tissue aggravations of the pre-existing conditions she already had, and lasted only six weeks." (Doc. 33 at 2, underlining in the original) The Court is not certain what to make of these statements. Seemingly, Mrs. Ramone's doctor, even now, believes the ongoing spinal injuries were unrelated to the accident. If Mrs. Ramone intended otherwise, the Court is stymied that that she didn't file a declaration saying so or, at a minimum, make clear in her papers that she *is* claiming it was caused by the accident. In any event, she offers to explanation about when she learned about the lumbar injury or how she has concluded, if she has, that it was caused by the accident.

contrary, surgical intervention was discussed for both Plaintiffs prior to the submission of the administrative claims. (*See* Doc. 26-3 at 12 [indicating surgery was recommended for Raymond Ramone] and Doc. 26-3 at 18 [noting "elective definitive surgical intervention [was] discussed for an anterior cervical discectomy and fusion" with Rita Ramone]). To the extent Raymond now suggests he was unaware that he have "a long road to recovery" and is entitled to his loss of earnings (*see* Doc. 28-1 at 41), the evidence submitted indicates he was informed in September 2016 that it would be a long process. (Doc. 26-3 at 12) Specifically, Dr. Schamblin noted:

> He understands that he has a full-thickness retracted rotator cuff tear. At this time surgery for a left shoulder arthroscopy with rotator cuff repair, decompression and distal clavicle excision has been recommended. The patient understands that he should avoid heavy lifting, pushing, pulling. The patient can apply ice and take nonsteroidal anti-inflammatories as necessary. He can continue his physical therapy as prescribed for his cervical spine condition. He understands the importance of maintaining shoulder range of motion. **He understands that after the arthroscopy he will be immobilized in an UltraSling for 5-6 weeks** and that he will require later physical therapy to regain range of motion and strength within the shoulder. **He is aware that this is typically a 6-9 month recovery process.**

(Doc. 26-3 at 12, emphasis added) Thus, Mr. Ramone knew of his physical limitations and the expectation that recovery would take a significant amount of time. Because Plaintiffs submit no evidence to show their injuries worsened in ways not predicted by their treating physicians, they fail to show how *Michels* is applicable to this action. Indeed, Mr. Ramone had undergone his surgery and returned to work by the time they abandoned the claim process and filed their lawsuit initiating this action. (Doc. 28-1 at 31-32, 34-35, 38)

Despite her claim that surgery of her cervical spine was not recommended until the summer of 2018 (Doc. 33 at 2), the record she provides demonstrate that doctors spoke to her about surgery well before this, on September 29, 2016 (Doc. 26-3 at 18), on November 6, 2017 (Doc. 28-1 at 15-17) and on January 25, 2018 (Doc. 28-1 at 13-14).

Because Plaintiffs have failed to identify any "newly discovered evidence not reasonably discoverable at the time of presenting the claim" related to their physical injuries, both Plaintiffs fail to meet their burden to show the exception under Section 2675(b) applies to their claims.

### 2. Intervening facts

Plaintiffs fail to address the two exceptions to Section 2675(b) in a distinct manner, though

"intervening facts" addresses information gained or events that occurred after the filing of the claim, while "newly discovered evidence" existed at the claim was filed but not then discoverable. *See Lowry*, 958 F. Supp. at 710. Nevertheless, the Court notes two cases cited by Plaintiffs address the "intervening facts" exception: *Milano v. United States*, 92 F. Supp. 2d 769, 775-76 (N.D. Ill. 2000) and *Allgeier v. United States*, 909 F.2d 869, 877-78 (6th Cir. 1990).

Plaintiffs refer to *Milano* for the proposition that they were not required to calculate damages in their claims based on a "worst case scenario."[5] (Doc. 28 at 5) In *Milano*, the plaintiff argued he did not know the full extent of his injury at the time he filed the claim. *Id.*, 92 F.Supp.2d at 775. The court noted Milano presented evidence that he suffered "reherniation of the same discs and development of scar tissue requiring additional surgery," and found these were "potentially intervening facts that may meet the requirements of the §2675 exception." *Id.* at 775-76. The court determined the plaintiff would be permitted to introduce evidence related to his surgeries and held "[i]f the evidence reveals that Plaintiff could have foreseen the need for future surgeries or his inability to work, then his claim for damages here will be capped at the amount he sought in his administrative claim." *Id.* at 777. Thus, the court declined to find, at that time, that the plaintiff had identified an intervening fact when he suffered reherniation that required an additional surgery. Nevertheless, the facts in *Milano* must be distinguished from those before the Court, as neither Raymond nor Rita Ramone report they suffered re-injury from the accident and the evidence indicates that the medical claims were foreseeable.

Plaintiffs also contend the decision by the Sixth Circuit in *Allgeier* is "particularly instructive," but fail to explain why they think so. (*See* Doc. 28 at 4-5) Plaintiffs note:

> The Court in *Allgeier v[.] United States*, 909 F. 2d 869, 877-878 (1990) looked to the question of the permanence of injury as opposed to injuries originally thought to be temporary. The Court looked favorably upon the language of the District Court's opinion "Proof is presented at trial in this case that Maria Voldirick's injuries were permanent rather than temporary. After her administrative claim was submitted, Maria continued to undergo treatment for her injuries and subsequently had surgery on her left knee over one and half years after the date of the filing of the administrative claim".
> [T]he Court, in exercise of its discretion, finds that these intervening facts warrant an increase in recovery over an amount in the administrative claim . . . Maria Voldirick did not know fully the medical extent of her injuries and expenses at the time of the filing of the claim and hence, may recover an amount in excess of the initial administrative

---

[5] The Court agrees that the plaintiff need not anticipate every possibility—such as death resulting from treatment—but must present in the claim those damages that are reasonably likely to result from the conditions based upon the information discussed with their doctors.

12

> claim. Because permanent injuries warrant more damages than temporary ones, and because there is substantial proof of additional treatment, risk, surgery, and expenses pain long after the filing of Maria Voldick's administrative claim, this Court's judgment permitting recovery in excess of the original claim was proper.

(Doc. 28 at 4-5, quoting *Allgeier*, 909 F. 2d at 877-878) The Ramones do not present evidence that their injuries were originally believed to be temporary and later were identified as permanent conditions. Further, as discussed above, the Ramones fail to demonstrate they were unaware of the medical extent of their injuries in a manner that the expenses could have been predicted. Consequently, *Allgeier* does not assist the Court in its analysis of Plaintiffs' claims.

Because Plaintiffs fail to identify "proof of intervening facts, relating to the amount of the claim," they fail to carry the burden to show the second exception to Section 2675(b) applies to their administrative claims. *See* 28 U.S.C. § 2675(b).

**IV.     Conclusion and Order**

Based upon the evidence and arguments presented, the Court finds Plaintiffs fail to identify newly discovered evidence or intervening facts under Section 2675(b) of the FTCA, and Plaintiffs fail to meet their burden to establish that they are entitled to pursue damages in excess of the amount asserted in the administrative claims. Accordingly, the Court **ORDERS**:

1. The Government's motion to limit damages to the amounts indicated in the administrative claims (Doc. 26) is **GRANTED**;
2. The damages of Raymond Ramone shall be limited to $25,000; and
3. The damages of Rita Ramone shall be limited to $25,000.00

IT IS SO ORDERED.

Dated:     **July 15, 2019**                    **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE